**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
-----------------------------------------------------------------
JOSEPH PALERMO, individually and on behalf    :
of all others similarly-situated              :
729 Lippincott Avenue                         :     CIVIL ACTION NO.: _____
Moorestown, NJ 08057                          :
                                              :     JURY TRIAL DEMANDED
                    Plaintiff,                :
        v.                                    :
                                              :
VALLEY NATIONAL BANCORP                       :
d/b/a VALLEY NATIONAL BANK                    :
1455 Valley Road                              :
Wayne, NJ 07470                               :
                                              :
                    Defendant.                :
-----------------------------------------------------------------
```

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, Joseph Palermo ("Plaintiff"), hereby brings this action against Defendant Valley National Bancorp d/b/a Valley National Bank ("Defendant"), and alleges, upon personal belief as to his own acts, and upon information and belief as to the acts of others, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this collective/class action complaint contending that Defendant unlawfully misclassified him and other similarly situated Home Loan Consultants as "exempt" from overtime within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.*, resulting in the denial of overtime compensation at one and a half times their "regular rate" of pay as required by the same.

2. Plaintiff also alleges that Defendant failed to pay him certain wages, bonuses, and incentives to which he was contractually entitled within the meaning of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, *et seq.* and tortuously interfered with his

contractual relations and prospective economic advantage following his departure from the company on April 1, 2020.

3.     Plaintiff brings this action as a representative action under the FLSA, NJWHL, and NJWPL for monetary damages and penalties, to seek redress for Defendant's willful, unlawful, and improper conduct.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." See 29 U.S.C. § 216(b).

5.     This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's FLSA claims.

7.     The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties reside in this judicial district, doing business therein, and the unlawful practices of which Plaintiff are complaining were committed in the State of New Jersey.

## PARTIES

8.     Plaintiff Joseph Palermo currently resides at 729 Lippincott Avenue, Moorestown, NJ 08057.

9.     Upon information and belief, Valley National Bancorp d/b/a Valley National Bank is a corporation organized and existing under the laws of the State of New Jersey with a headquarters at 1455 Valley Road, Wayne, NJ 07470.

10.     Defendant is an employer and enterprise engaged in commerce and is covered by the FLSA.

11.     During the course of their employment with Defendant, Plaintiff and Class Plaintiffs are/were engaged in commerce within the meaning of the FLSA.

12.     Defendant is a covered enterprise and employer under the FLSA in that, in each of the past three (3) years, it had an annual dollar volume of sales or business done of at least $500,000, and had multiple employees (including, but not limited to Plaintiff) engaged in commerce within the meaning of the FLSA.

13.     Plaintiff and Class Plaintiffs are/were employees who have been employed by Defendant during all relevant times hereto and, as such, are employees entitled to the FLSA's protections.  See 29 U.S.C. § 203(e).

14.     At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment and for Defendant.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

15.     Paragraphs 1 through 14 are hereby incorporated by reference as though the same were fully set forth at length herein.

16.     This action is brought as a collective action to recover unpaid overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages owed to Plaintiff and all similarly situated current and former employees of Defendant.

17.     Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff brings this action individually and on behalf of all other similarly situated persons presently or formerly employed by Defendant in the position of Home Loan Consultant who were denied overtime compensation

at their regular rate of pay for hours worked over forty (40) in a workweek due to Defendant's policy and practice of misclassifying them as "exempt" from overtime under the FLSA ("Class Plaintiffs").

18.      Plaintiff estimates that there are approximately one hundred (100) other similarly situated Class Plaintiffs who either are working or worked for Defendant and were unlawfully denied overtime compensation at 1.5 times their "regular rate" of pay for hours worked in excess of forty (40) in a workweek.  The precise number of employees can be easily ascertained by Defendant.  These employees can be identified and located using Defendant's payroll and personnel records.  Potential Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

19.      Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because all the Class Plaintiffs are similarly situated.  Plaintiff and Class Plaintiffs were similarly denied overtime compensation at their regular rate of pay as a result of Defendant's unlawful misclassification of them as "exempt" under the FLSA, had the same or similar job classifications and job duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures.  Further, Defendant's willful policies and practices, which are discussed more fully in this Collective and Class Action Complaint, whereby Defendant has failed to pay Class Plaintiffs an overtime premium based on 1.5 times their "regular rate" for all hours worked over forty (40) hours in a workweek, have affected Class Plaintiffs in the same fashion.

20.      Plaintiff will request the Court to authorize notice to all current and former similarly-situated employees employed by Defendant, informing them of the pendency of this

action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of

seeking unpaid compensation, overtime compensation, and liquidated damages under the FLSA.

## NJWHL CLASS ACTION ALLEGATIONS

21.     Paragraphs 1 through 20 are hereby incorporated by reference as though the same

were fully set forth at length herein.

22.     Plaintiff bring this action individually, and on behalf of the following state-wide

class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil

Procedure:

> All individuals presently or formerly employed by Defendant in the position of
> Home Loan Consultant at any point during the last three (3) years who were
> denied overtime compensation at 1.5 times their "regular rate" of pay for all hours
> worked over forty (40) in a workweek due to Defendant's policy and practice of
> misclassifying them as "exempt" from overtime compensation ("Class
> Plaintiffs").

23.     The members of the class as so numerous that joinder of all members is

impractical.  Class members may be informed of the pendency of this class action by direct mail.

24.     Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are questions of law

and fact common to the Class, including, but not limited to:

a.     Whether Plaintiff and the Class are entitled to overtime compensation for

services rendered in excess of forty (40) hours per week under the NJWHL;

b.     Whether Plaintiff and the Class qualified for the highly-compensated

employee exemption under the NJWHL;

c.     Whether Plaintiff and the Class qualified for the outside salesperson

exemption under the NJWHL;

d.     Whether Plaintiff and the Class qualified for the executive, administrative,

or executive exemptions under the NJWHL;

e.      Assuming Plaintiff and the Class were misclassified as exempt, whether Defendant is required to include Plaintiff's and Class Plaintiffs' earnings in commissions, incentives, bonus payments, and other non-discretionary earnings in its calculation of their "regular rate" of pay under the NJWHL;

f.      Whether Plaintiff and the Class worked in excess of forty (40) hours per week;

g.      Whether Defendant required Plaintiff and the Class to work in excess of forty (40) hours per week;

h.      Whether Plaintiff and the Class have suffered and are entitled to damages, and, if so, in what amount;

i.      Whether Defendant willfully violated the NJWHL; and

j.      Whether Plaintiff and the Class are entitled to liquidated damages under the NJWHL.

25.    Plaintiff's claims are typical of the claims of the Class members.  Plaintiff is a former employee of Defendant who was employed in the position of Home Loan Consultant and who has suffered similar injuries as those suffered by the Class members as a result of their misclassification as exempt from overtime compensation.  Defendant's conduct of violating the NJWHL has affected Plaintiff and the Class in the exact same way.

26.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is similarly situated to the Class and have no conflict with the Class members.

27.    Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

28.     Pursuant to Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, this action is properly maintained as a class action because:

a.      the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would have the potential to establish incompatible standards of conduct for Defendant;

b.      Defendant, by misclassifying its Home Loan Consultants as "exempt" from overtime, has acted or refused to act on grounds generally applicable to the Class, thereby making equitable relief appropriate with respect to the Class as a whole; and

c.      the common questions of law and fact set forth above applicable to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this case, especially with respect to considerations of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of the controversy.

29.     A Class Action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical.  Class Action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually.  Additionally, as the damages suffered by each Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for the Class members to bring individual claims. The presentation of separate actions by individual Class members could create a risk of

inconsistent and varying adjudications, establish incompatible standards of conduct for

Defendant and/or substantially impair or impede the ability of the Class to protect their interests.

## FACTUAL ALLEGATIONS RELATED TO PLAINTIFF'S COLLECTIVE/CLASS ACTION CLAIMS FOR UNPAID OVERTIME COMPENSATION

30.     Paragraphs 1 through 29 are hereby incorporated by reference as though the same were fully set forth at length herein.

31.     Plaintiff Joseph Palermo worked as a Home Loan Consultant for Defendant from February 2017 until April 1, 2020.

32.     As Home Loan Consultant, Plaintiff's compensation consisted of an annual salary plus commissions and other incentive earnings.

33.     Throughout the course of his employment, Plaintiff, and, upon information and belief, all Home Loan Consultants employed by Defendant were classified as "exempt" from overtime compensation under the FLSA and NJWHL.

34.     Upon information and belief, all of Defendant's Home Loan Consultants are paid an annual salary plus commission and other incentive earnings.

35.     Plaintiff's and Class Plaintiffs' primary job duty consisted of selling Defendant's mortgage loan products to potential borrowers, including, in large part, to current clients.

36.     Plaintiff and Class Plaintiffs worked/work primarily out of Defendant's Cherry Hill, New Jersey office, where they were/are provided dedicated office space and assistants, and were/are expected to maintain regular office hours and, with few exceptions, to be physically present in Defendant's office, or working from a dedicated home office, on a daily basis.

37.     Throughout the course of his employment, Plaintiff received a base salary of $24,000 per year, equivalent to $461.55 per week.

38.     Upon information and belief, all of Defendant's Home Loan Consultants received a base salary of $24,000 per year.

39.     Plaintiff regularly worked over forty (40) hours per week.  In this regard, Plaintiff typically worked approximately seventy (70) hours per week, including approximately ten (10) to twelve (12) hours per day during the workweek as well as ten (10) to fifteen (15) hours during the weekend.

40.     Upon information and belief, Class Plaintiffs regularly worked over forty (40) hours per week.  In this regard, upon information and belief, Class Plaintiffs typically worked approximately seventy (70) hours per week, including approximately ten (10) to twelve (12) hours per day during the workweek as well as ten (10) to fifteen (15) hours during the weekend.

41.     Defendant was aware that Plaintiff and Class Plaintiffs regularly worked far in excess of forty (40) hours per week.

42.     Despite working approximately thirty (30) hours of overtime per week, Plaintiff was not paid overtime compensation at one and a half (1.5) times his regular rate of pay due to Defendant's misclassification of its Home Loan Officers as "exempt" under the FLSA and NJWHL.

43.     For example, during the biweekly pay period of December 4, 2019 to December 17, 2019, Plaintiff estimates that he worked approximately one hundred and forty (140) hours, but was not paid any overtime compensation for the approximately sixty (60) hours of overtime he worked during that pay period.

44.     Instead, during said pay period, Plaintiff received the same biweekly salary of $923.08 plus an additional $89,098.70 in commissions.

45.     Plaintiff and Class Plaintiffs were misclassified as exempt, as they do not meet the criteria for any applicable exemptions from overtime under the FLSA or NJWHL.

46.     In this regard, Plaintiff and Class Plaintiffs do not qualify for the Outside Sales Exemption as they were not customarily and regularly engaged away from Defendant's place or places of business.  To the contrary, Plaintiff and Class Plaintiffs were/are required to report to Defendant's worksite to perform their job duties, where they generally maintained a regular, forty-plus hour per week minimum schedule, in addition to other time worked remotely from their home offices.

47.     Plaintiff and Class Plaintiffs do not qualify for the Retail Sales Employee Exemption because Defendant, who is engaged in the financial industry and the making and selling of loans, is not retail or service establishments within the meaning of the FLSA/NJWHL. In this regard, Defendant lack a retail concept and are distinct from the sort of enterprises typically regarded as being consumer-end retail or service establishments.  See 29 CFR 779.317.

48.     From January 1, 2020 to the present, Plaintiff and Class Plaintiffs did not/do not meet the salary requirements of the Highly Compensated Employee exemption, Executive Exemption, Administrative Exemption, or Learned Professional Exemption, in that their weekly salary of $461.51 falls significantly below the $684 per week required under the FLSA/NJWHL. See 29 C.F.R. § 541.601(a)-(b).

49.     Moreover, Plaintiff and Class Plaintiffs do not qualify for the Administrative Employee Exemption because they did not/do not perform office work directly related to the management or general business operations of Defendant; rather, the primary duty of Plaintiff and Class Plaintiffs (i.e. mortgage sales) was/is on the production end of Defendant's operations spectrum.  Moreover, Plaintiff and Class Plaintiffs did/do not exercise discretion or independent

judgment as to matters of business significance, as their discretion was/is significantly restricted by Defendant's pre-existing and established operating procedures and guidelines (including, but not limited to, Defendant's robust and highly-detailed quality control protocols), particularly with respect to which financial products to offer and on what terms.

50.     Plaintiff and Class Plaintiffs do not qualify for the Executive Employee Exemption because they did/do not exercise any managerial functions, direct the work of other employees, or have the authority to hire or fire other employees of Defendant, nor did/does Defendant give particular weight to any suggestions made by Plaintiff and Class Plaintiffs regarding employee status changes.

51.     Plaintiff and Class Plaintiffs do not qualify for the Learned Professional Exemption because their primary duty does not include the performance of work predominately intellectual in nature requiring advanced knowledge in a field of science or learning acquiring through a prolonged course of intellectual instruction.  In this regard, Plaintiff's and Class Plaintiffs' job duties do not require the consistent exercise of discretion and judgment, as distinguished from the performance of routine mental, manual, and mechanical work.  Rather, Plaintiff and Class Plaintiffs are required to perform their job responsibilities in accordance with specific guidelines, protocols, procedures, and trainings provided by Defendant.

52.     Finally, there are no other exemptions under the FLSA and/or NJWHL which could be potentially applicable to Plaintiff and Class Plaintiffs.

53.     Accordingly, Plaintiff, Class Plaintiffs, and Class Plaintiffs were/are within the meaning of the FLSA and NJWHL, non-exempt employees of Defendant.

54.     Defendant failed to pay Plaintiff and Class Plaintiffs at a rate of at least 1.5 times their "regular rate" of pay for each hour they worked in excess of forty (40) hours in a workweek.

55.     As a result of Defendant's aforesaid illegal actions, Plaintiff and Class Plaintiffs have suffered damages.

## FACTUAL ALLEGATIONS RELATED TO PLAINTIFF'S INDIVIDUAL CLAIM TO UNPAID WAGES

56.     Paragraphs 1 through 55 are hereby incorporated by reference as though the same were fully set forth at length herein.

57.     Pursuant to Defendant's policies and practices, Defendant offers an employee referral bonus of $1,500 for each qualified new hire referred by its current employees (hereinafter, "ERB Policy").

58.     The only requirements for earning a referral bonus under the ERB Policy is for the VNB employee to make the referral and for the qualified new-hire to remain employed with the company for six (6) months thereafter.

59.     Throughout the course of Plaintiff's employment, Defendant regularly promoted the ERB Policy to Plaintiff and his coworkers through email communications.

60.     During the course of his employment, Plaintiff successfully referred at least six (6) qualified individuals for employment with Defendant pursuant to the ERB Policy, making said referrals to his supervisor, Kathy Griffin, Branch Manager, as well as Kevin Chittenden, Executive Vice President and Chief Consumer Lending Officer.

61.     Upon information and belief, each of the individuals whom Plaintiff successfully referred for employment with Defendant remained with the company for at least six (6) months.

62.     Despite the fact that Plaintiff clearly satisfied the conditions for earning a referral bonus pursuant to the ERB Policy, Defendant did not pay him bonuses for at least six (6) qualified individuals, resulting in lost wages of at least $9,000.

63.     As a result of the aforesaid unlawful actions of Defendant, Plaintiff has suffered damages.

## FACTUAL ALLEGATIONS RELATED TO DEFENDANT'S INTERFERENCE WITH PLAINTIFF'S CONTRACTUAL RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE

64.     Paragraphs 1 through 63 are hereby incorporated by reference as though the same were fully set forth at length herein.

65.     On April 1, 2020, Plaintiff tendered his resignation to Defendant.

66.     Plaintiff's last day of work was April 1, 2020.

67.     Following Plaintiff's departure from the company, Defendant intentionally and maliciously interfered with Plaintiff's business relationships with his clients, resulting in his loss of several clients and/or accounts and negatively impacting his preferred lender status on multiple contracts.

68.     For example, on or around the day Plaintiff left the company, Defendant changed its long-standing policy for handling Consolidation, Extension, and Modification Agreement ("CEMA") loans in order to disincentive Plaintiff's clients from leaving with him and transferring their accounts to his new bank.

69.     In this regard, until on or around April 1, 2020, Defendant's long-standing policy was to transfer the funds associated with the fees and/or taxes originally paid to open a CEMA loan from Defendant to the bank of a departing client's choosing, facilitating a smooth transfer.

70.     Defendant was well aware that its New York-based customers generally, and Plaintiff's clients specifically, inquired about and relied on Defendant's policy with respect to CEMA when making the decision to do business with Defendant.

71.     Defendant was aware that Plaintiff relied on Defendant's aforementioned CEMA policy when encouraging his clients to do business with Defendant.

72.     It is believed and therefore averred that Defendant changed this policy to impose a significant opportunity cost on Plaintiff's clients and thus discourage them from transferring their accounts elsewhere, resulting in economic disadvantage to Plaintiff.

73.     Indeed, upon information and belief, Defendant made multiple exceptions to this policy change for non-clients of Plaintiff, further evidencing Defendant's intent maliciously to interfere with Plaintiff's economic opportunities and damage his livelihood.

74.     Moreover, despite Defendant's claim that it instituted the above policy change across the board, Defendant nevertheless granted one or two exceptions to the policy for certain clients of Plaintiff who strongly protested Defendant's abrupt, unfair, and selective application of the above policy change.

75.     In addition, Defendant intentionally and without Plaintiff's knowledge or permission engaged in misleading and deceptive marketing efforts directed at Plaintiff's clients, through communications which improperly contained Plaintiff's name and Nationwide Mortgage Licensing System & Registry ("NMLS") ID number, in a further effort to solicit Plaintiff's clients to remain with Defendant and/or not transfer their accounts to Plaintiff's new bank.

76.     For example, on May 28, 2020, nearly two (2) months after Plaintiff's resignation, Defendant caused an email with Plaintiff's name and NMLS ID number to be sent out from Plaintiff's company email account to thousands of Plaintiff's clients pitching "Valley's vast

14

product portfolio with loan programs tailored to unique homebuyers and their unique situations,"
and encouraging recipients to either visit Valley National Bank's website or respond to the email
by requesting a conversation.

77.   Upon information and belief, Defendant also set up forwarding on Plaintiff's
email account, so that any clients who responded to this misleading and deceptive marketing
email would be redirected to another Home Loan Consultant employed by Defendant.

78.   Upon information and belief, when responding to inquiries from recipients of
these misleading and deceptive marketing attempts, Defendant actively encouraged the
impression that Plaintiff had left the company, was not reachable, and/or did not plan to continue
servicing the accounts he had generated at Defendant.

79.   In addition, upon information and belief, Defendant dropped their rate by a
substantial amount in order to entice at least one of Plaintiff's CEMA clients to remain with the
bank, while failing to offer that rate to other non-clients of Plaintiff.

80.   Not only were Defendant's actions in this regard potentially in violation of
applicable fair lending regulations, they were clearly intended to undermine Plaintiff's business
relationships with his clients and harm his prospective economic advantage.

81.   Upon information and belief, Defendant's actions as aforesaid also interfered with
certain contracts Plaintiff entered into with clients under which Plaintiff was entitled to preferred
lender status.

82.   Plaintiff had a reasonable expectation of economic advantage with respect to the
mortgage loan clients and accounts he generated during the course of his employment with
Defendant.

83.     Defendant was not a party to the contracts between Plaintiff and his clients under which Plaintiff was entitled to preferred lender status, and Defendant intentionally and unreasonably interfered with that relationship by its actions as aforesaid, resulting in damages to Plaintiff.

84.     As a result of Defendant's intentional, malicious, and willful actions as aforesaid, Plaintiff has suffered significant economic damages, including earnings and earnings potential, and sustained damage to his professional reputation and client relationships.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, *et seq.***
**<u>FAILURE TO PAY OVERTIME COMPENSATION</u>**

85.     Paragraphs 1 through 84 are hereby incorporated by reference as though the same were fully set forth at length herein.

86.     Section 207(a)(1) of the FLSA states that employees must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

87.     As detailed above, Defendant unlawfully misclassified Plaintiff and Class Plaintiffs as "exempt" from overtime, resulting in the denial of overtime compensation.

88.     The foregoing actions of Defendant and the policies and practices of Defendant violate the FLSA.

89.     Defendant's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

90.     Defendant is liable to Plaintiff and Class Plaintiffs for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C.  216(b), as well as reasonable attorney's fees, costs, and expenses.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of himself and Class Plaintiffs;

A.      An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.      An Order from the Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all employees who have worked for Defendant during the preceding three (3) years as a Home Loan Consultant and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked for Defendant during the liability period, but were not paid overtime compensation at 1.5 times their regular rate of pay as required by the FLSA;

C.      Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

D.      Adjudicating and declaring that Defendant violated the FLSA by failing to pay Plaintiff and Class Plaintiffs overtime compensation at a rate of 1.5 times their regular rate of pay as a result of Defendant's misclassification of them as "exempt" from overtime;

E.      Awarding Plaintiff and Class Plaintiffs back pay wages and/or overtime wages in an amount consistent with the FLSA;

F.      Awarding Plaintiff and Class Plaintiffs liquidated damages in accordance with the FLSA;

G.      Awarding Plaintiff reasonable attorney's fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

H.      Awarding pre- and post-judgment interest and court costs as further allowed by law;

I.      Granting Plaintiff and the Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt-in consent forms, or any other method approved by the Court; and

J.      For all additional general and equitable relief to which Plaintiff and the Class Plaintiffs may be entitled.

**COUNT II**
**NEW JERSEY WAGE AND HOUR LAW**
**N.J.S.A. § 34:11-56a, *et seq.***
**FAILURE TO PAY OVERTIME COMPENSATION**

91.     Paragraphs 1 through 90 are hereby incorporated by reference as though the same were fully set forth at length herein.

92.     The NJWHL provides that an employer must pay certain minimum wages, including overtime wages, to its employees.  See N.J.S.A. 34:11-56a4.

93.     The NJWHL further provides that employees must be paid at a rate not less than the greater of 1.5 times the employee's "regular hourly wage," or 1.5 times the minimum wage, for all hours worked over 40 in a workweek.  See N.J.S.A. 34:11-56a4.

94.     By its actions alleged above, Defendant has violated the provisions of the NJWHL by failing to properly pay overtime compensation to Plaintiff and Class Plaintiffs.

95.     As a result of Defendant's unlawful acts, Plaintiff and the Class Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, together with interest, costs and attorney's fees pursuant to the NJWHL.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class Plaintiffs, prays for judgment against Defendant as follows:

A.       An Order certifying this case as a class action and designating Plaintiff as the representative of the Class and his counsel as class counsel;

B.       An award to Plaintiff and Class Plaintiffs for the amount of unpaid overtime compensation to which they are entitled, including interest thereon, and penalties subject to proof;

C.       An award to Plaintiff and Class Plaintiffs of reasonable attorney's fees and costs pursuant to the New Jersey Wage and Hour Law; and

D.       An award to Plaintiff and Class Plaintiffs for any other damages available to them under applicable New Jersey law, and all such other relief as this Court may deem proper.

**COUNT III**
**NEW JERSEY WAGE PAYMENT LAW**
**N.J.S.A. 34:11-4.1, *et seq.***
**FAILURE TO PAY WAGES DUE AND OWING**
**(Individual Count)**

96.       Paragraphs 1 through 95 are hereby incorporated by reference as through the same were fully set forth at length herein.

97.       At all relevant times, Plaintiff was an employee protected by the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, *et seq.*  See N.J.S.A. 34:11-4.1(b).

98.       At all relevant times, Defendant was an employer bound by the duties of the NJWPL.  See N.J.S.A. 34:11-4.1(a).

99.       Upon information and belief, Plaintiff was entitled to bonuses pursuant to Defendant's policies and procedures, including Defendant's ERB Policy, which he was not paid by Defendant.

100.    The employee referral bonuses Plaintiff earned are "wages" which are due and owing under the NJWPL.

101.    By its actions alleged above, Defendant has violated the provisions of the NJWPL by failing to properly compensate Plaintiff for said bonuses.

102.    As a result of Defendant's unlawful acts, Plaintiff has been deprived of earned bonuses in amounts to be determined at trial, and is entitled to recovery of such amounts, plus liquidated damages, together with costs and attorney's fees pursuant to the NJWPL.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that his Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    An award to Plaintiff in an amount equal to his unpaid wages;

B.    Liquidated damages in an amount consistent with the NJWHL;

C.    An award to Plaintiff of reasonable attorneys' fees and costs pursuant to the NJWHL;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Individual Count)

103.    Paragraphs 1 through 102 are hereby incorporated by reference as though the same were fully set forth at length herein.

104.    As set forth above, Plaintiff had a reasonable expectation of economic advantage with respect to the mortgage loan clients and accounts he generated during the course of his employment with Defendant.

105.    Defendant intentionally and with malice interfered with Plaintiff's prospective economic advantage.

106.    Defendant was well aware of Plaintiff's intention to bring his clients with him to his new bank and engaged in the conduct detailed above in order to disrupt his plans and cause him economic harm.

107.    As a direct and proximate result of Defendant's actions, Plaintiff has already lost and will likely continue to lose clients, resulting in lost economic gain, lost earnings and earnings potential, and damage to his professional reputation and client relationships.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that his Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Actual and/or compensatory damages in an amount to be determined at trial;

B.    Punitive damages to punish Defendant for its wanton and willful disregard of Plaintiff's rights;

C.    Pre-judgment interest in an appropriate amount; and

D.    Such other and further relief as is just and equitable under the circumstances.

**COUNT V**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(Individual Count)**

108.    Paragraphs 1 through 107 are hereby incorporated by reference as though the same were fully set forth at length herein.

109.    As set forth above, Plaintiff was the beneficiary of multiple contracts, to which Defendant was not a party, which conferred preferred lender status on Plaintiff.

110.     Defendant intentionally and unreasonably interfered with the aforementioned contracts by actively and through misleading and deceptive methods soliciting Plaintiff's clients and engaging in unfair lending practices to discourage them from following Plaintiff to his new place of business.

111.     Defendant was aware of Plaintiff's beneficiary status under the aforementioned contracts and sought to interfere with Plaintiff's rights thereunder.

112.     As a direct and proximate result of Defendant's actions, Plaintiff has already lost and will likely continue to lose clients, including those with whom he holds preferred lender status pursuant to a contract to which Defendant is not a party, resulting in lost economic gain, lost earnings and earnings potential, and damage to his professional reputation and client relationships

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that his Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.     Actual and/or compensatory damages in an amount to be determined at trial;

B.     Punitive damages to punish Defendant for its wanton and willful disregard of Plaintiff's rights;

C.     Pre-judgment interest in an appropriate amount; and

D.     Such other and further relief as is just and equitable under the circumstances.

### <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:    */s/ Michael Murphy*
       Michael Murphy, Esquire
       Michael Groh, Esquire
       Eight Penn Center, Suite 2000
       1628 John F. Kennedy Blvd.
       Philadelphia, PA 19103
       TEL: 267-273-1054
       FAX: 215-525-021
       murphy@phillyemploymentlawyer.com
       mgroh@phillyemploymentlawer.com
       Attorneys for Plaintiff

Dated: July 24, 2020

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's and the Class/Collective Plaintiff's employment, to their potential claims and their claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.